IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT FARMER,

                    Plaintiff,

vs.                                        Case No. 10-1284-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 25, 2009, administrative law judge (ALJ) James Francis Gillet issued his decision (R. at 16-30). Plaintiff alleges that he has been disabled since November 15, 2004 (R. at 16). Plaintiff is insured for disability insurance benefits through December 31, 2009 (R. at 18). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 18). At step two, the ALJ found that plaintiff had the following severe

impairments: residual pain and infection from left lower
extremity below the knee amputation, left hip pain, lumbar pain,
depression, and a personality disorder (R. at 19). At step
three, the ALJ determined that plaintiff's impairments do not
meet or equal a listed impairment (R. at 21). After determining
plaintiff's RFC (R. at 23), the ALJ found at step four that
plaintiff is unable to perform past relevant work (R. at 28). At
step five, the ALJ found that plaintiff could perform other jobs
that exist in significant numbers in the national economy (R. at
29). Therefore, the ALJ concluded that plaintiff was not
disabled (R. at 29-30).

**III. Did the ALJ err in his consideration of the medical opinion
evidence regarding plaintiff's mental impairments?**

The ALJ made RFC findings which included the following
mental limitations:

> ...he has marked limitations in carrying out
> complex instructions, making judgments on
> complex work-related decisions, and
> interacting appropriately with the public;
> and he has mild limitations interacting
> appropriately with co-workers and
> supervisors, and responding appropriately in
> unusual work situations or changes in a
> routine work settings.

(R. at 23). In making these mental RFC findings, the ALJ
rejected the opinions of two medical sources, Dr. McGehee, who
performed a psychological evaluation on October 24, 2007 (R. at
221-224), and who filled out a medical source statement-mental

5

dated January 31, 2008 (R. at 226-227), and Dr. Ball, who filled out a medical source statement-mental on December 29, 2008 after seeing the plaintiff on two occasions (R. at 232-233, 259-260).

Dr. McGehee found that plaintiff was markedly limited in 9 categories, and moderately limited in 11 categories (R. at 226-227). His evaluation consisted of a clinical interview, mental status exam and the administration of the Millon Clinical Multiaxial Inventory-III (MCMI-III) (R. at 222). His test results and evaluation summary are as follows:

Test Results:

The MCMI-III is a valid test. Robert was cooperative, although he tended toward self-abasement and self-disclosure. He is depressed with symptoms of pessimism and passivity and is preoccupied with negative events. He feels helpless, hopeless, worthless, inadequate, and insecure. Although he is usually responsible and conscientious, he is self-critical regardless of what he achieves. He is "down" all the time and tends to find fault in even the most joyous experience. He is overly dependent upon other people for support and acceptance. He has difficult expressing anger and aggression and tends to displace it onto himself. His mood is usually one of dejection and negative cognitions, but he does not tend to consider himself depressed. This was noted in the interview when he denied depression. He seems lost in his surrounding. He blends into the background and he engages in vague pursuits. He is indifferent to social relationships and does not seek social contact. He seems to have a low need for social involvement and requires little affection and lacks both warmth and emotional expression. He is insensitive to his own feelings as well as to the feelings of others. Detachment is

6

not a defense mechanism. He is comfortable this way and prefers it, at least at the conscious level. Underneath the detachment lies a rich fantasy life and excessive daydreaming. He is in a chronic dilemma because he cannot be in a relationship without fearing engulfment, nor can he be without a relationship without feeling intense abandonment. When stress is minimal, he probably appears generally well adjusted with few interpersonal difficulties, especially if he is in a dominant adaptive relationship in which his partner assumes primary responsibility and control for the decision-making. He is not antisocial, but he tends to engage in behaviors that are abusive and humiliating and may violate the rights and feelings of others. He can be aggressive and combative when provoked and is antagonistic and disagreeable towards other people. He is irritable and reacts angrily when confronted. He displays a mixture of passive compliance and obedience at one time and then oppositional and negativistic behavior the next time. He is unpredictable. He has a strong fear of rejection and poor self-esteem. He is quite narcissistic, fearless, prognathous, daring, blunt, aggressive, assertive, irresponsible, impulsive, ruthless, victimizing, intimidating, dominating, and is often energetic and competitive. He is chronically dissatisfied and harbors resentment over people that challenge, criticize, or express disapproval of his behavior. His touchy and jealous and broods over slight wrongs and provokes fear in those around him with his intimidating social demeanor. There is no evidence of histrionic, narcissistic, or compulsive personality disorders. However, he shows strong features of schizotypal and borderline personality disorders. There are very few symptoms of anxiety, alcohol or drug dependence, or post-traumatic stress disorder. There is no evidence of thought disorder or delusional disorder.

Summary:

Robert Farmer is a 46-year-old male who lost
his left leg at age 13. His right ankle and
foot were broken. He now complains of
numbness in his left hand and chronic pain.
Test results reveal him to be depressed and
pessimistic. He is dependent on one hand, but
very controlling and demanding on the other.
He has difficult with relationships because
of his high need for control and inflated
self image. He can be aggressive and
sadistic. He can be passive aggressive.
He has an "inferiority complex" and
compensates with a narcissistic, fearless,
daring, and irresponsible facade. He is
angry, resentful, and vindictive. He
shows behavioral peculiarities and
eccentricities, frequently making other
people feel uncomfortable. Based on this
evaluation, he meets the criteria for medical
assistance.

(R. at 222-223, emphasis added).  Dr. McGehee diagnosed plaintiff

with bipolar disorder and personality disorder.  He also

indicated that plaintiff had a GAF of 38[1] (R. at 223-224).

Dr. Ball also prepared a medical source statement-mental.

---

[1]GAF (global assessment of functioning) scores can be found
in the Diagnostic and Statistical Manual of Mental Disorders.  A
GAF score of 38 indicates:

31-40: **Some impairment in reality testing or
communication** (e.g., speech is at times
illogical, obscure, or irrelevant) **OR major
impairment in several areas, such as work or
school, family relations, judgment, thinking,
or mood** (e.g., depressed man avoids friends,
neglects family, and is unable to work...).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)
(4th ed., text revision, American Psychiatric Association 2000 at
34) (emphasis in original).

He opined that plaintiff was markedly limited in 6 categories, moderately limited in 6 categories, and not significantly limited in 8 categories (R. at 232-233).[2] The form filled out by Dr. Ball indicates that his findings are based on plaintiff's medical history, clinical or laboratory findings, diagnosis, treatment and/or prognosis (R. at 233).

The ALJ stated the following in regards to the report and opinions of Dr. Ball and Dr. McGehee:

> Dr. Ball's opinion is not supported by any treatment notes or by the results of clinical or diagnostic testing and is inconsistent with the evidence as a whole. Dr. Ball has not submitted any reports that would reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. _Similarly, the undersigned finds that Dr. McGehee apparently relied quite heavily on the claimant's subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported_. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. If he was disabled, as indicated in the mental opinions in Exhibits 4F [Dr. McGehee's mental RFC report] and 6F [Dr. Ball's mental RFC report] makes almost nothing possible, and are even worse than the claimant's own testimony. Accordingly, the undersigned finds that the medical evidence presented in Exhibits 4F, 5F [Dr. Ball's physical RFC

_____

[2]As noted above, Dr. McGehee found plaintiff markedly limited in 9 categories and moderately limited in 11 categories (R. at 226-227).

report], 6F, and 12F [a medical report from
Dr. McGehee indicating that plaintiff was
disabled, R. at 262-263], are contrary to
contemporaneous medical evidence of record
and does not support the claimant's alleged
level and kind of pain, and other symptoms,
as the doctor's reports are inconsistent the
overall medical evidence of record.

(R. at 27).

The ALJ rejected the opinions of Dr. McGehee because,
according to the ALJ, Dr. McGehee apparently relied quite heavily
on plaintiff's subjective complaints and uncritically accepted as
true most, if not all, of what plaintiff reported.  However,
there is absolutely no evidence in the record or in Dr. McGehee's
evaluation to support this assertion.  Dr. McGehee never
indicated that he relied quite heavily on plaintiff's complaints
or uncritically accepted most or all of what plaintiff reported.
In fact, as set forth above, Dr. McGehee's evaluation was based,
not just on a clinical interview and a mental status exam, but
also relied on test results from the MCMI-III.  Dr. McGehee
stated that the test results were valid (R. at 222), and set
forth in great detail the results of that test (R. at 222-223).

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121
(10th Cir. 2004), the court held:

The ALJ also improperly rejected Dr.
Hjortsvang's opinion based upon his own
speculative conclusion that the report was
based only on claimant's subjective
complaints and was "an act of courtesy to a
patient." Id. The ALJ had no legal nor
evidentiary basis for either of these

10

findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert

> judgment based on a continuing observation of
> the patient's condition over a prolonged
> period of time").

121 Fed. Appx. at 823-824.

As in <u>Langley</u> and <u>Victory</u>, in the case before the court, the ALJ had no legal or evidentiary basis for finding that Dr. McGehee's opinions relied quite heavily on plaintiff's subjective complaints. Again, as in <u>Langley</u> and <u>Victory</u>, there was nothing in Dr. McGehee's evaluation to indicate that he relied quite heavily on plaintiff's subjective complaints. Furthermore, the ALJ's finding erroneously ignored and failed to mention that Dr. McGehee's evaluation was based in large part on the MCMI-III test results, which were found to be valid. After describing the test results in some detail, Dr. McGehee's summary indicates that "Test results reveal him to be..." (R. at 223). The ALJ's basis for discounting the opinions of Dr. McGehee is clearly not supported by the evidence.

The ALJ also discounted the mental RFC opinions of Dr. Ball, noting that his opinions are not supported by treatment notes, clinical or diagnostic testing, and are inconsistent with the evidence as a whole (R. at 27). However, Dr. Ball's statement indicates that his findings are based on medical history, clinical and/or laboratory findings, diagnosis, treatment, and/or prognosis (R. at 233). Most importantly, Dr. Ball's opinions are consistent with the opinions of Dr. McGehee; in fact, his

limitations are generally less restrictive than those of Dr.
McGehee, whose results are based on valid test results. By
contrast, there is no evidence in the record that disputes or
contradicts the findings of Dr. Ball, or that indicates that
plaintiff's mental limitations are less severe than those of Dr.
Ball. Thus, the ALJ's bases for discounting the opinions of Dr.
Ball are also clearly not supported by the evidence.

The ALJ also asserts that the opinions of Dr. Ball and Dr.
McGehee regarding plaintiff's mental limitations "are even worse
than the claimant's own testimony" (R. at 27). However, the
court has carefully reviewed plaintiff's testimony, and finds
nothing in his testimony inconsistent with the opinions of Dr.
Ball or Dr. McGehee. This assertion by the ALJ is not supported
by the evidence.

## IV. Are the ALJ's RFC findings supported by substantial evidence?

According to SSR 96-8p, the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence." SSR 96-8p, 1996 WL 374184 at *7. However, the ALJ
did not cite to any evidence in support of his mental RFC
findings. Furthermore, the court finds that there is no evidence
in the record that would support the ALJ's mental RFC findings;
in fact, the uncontroverted medical evidence clearly establishes

that plaintiff's mental RFC limitations are greater than those contained in the ALJ's RFC findings.

In light of the clear error by the ALJ in his mental RFC findings, the court will only briefly consider the ALJ's physical RFC findings. The ALJ's physical RFC findings limited plaintiff to sedentary work, a limit to lifting and/or carrying less than 10 pounds, standing and/or walking for 20 minutes at a time, the need to shift positions while seated, no pushing/pulling with lower extremities, no use of air or vibratory tools, no use of motor vehicles, and avoid climbing or unprotected heights (R. at 23). In making these findings, the ALJ gave great weight to the opinions of Dr. Zeimet (R. at 27, 207-210). The ALJ's findings are also generally consistent with the opinions of Dr. Mauldin (R. at 25, 214-219).

Dr. Ball prepared a medical source statement-physical on December 29, 2008 indicating that plaintiff had greater limitations than those found by the ALJ (R. at 229-230); the ALJ stated that Dr. Ball's opinions were not supported by the treatment notes or by clinical or diagnostic testing and were inconsistent with the evidence as a whole (R. at 27). On the one hand, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). However, the ALJ did not

14

discuss whether or not there was a need to recontact Dr. Ball in accordance with 20 C.F.R. § 404.1512(e)(1), § 416.912(e)(1), and SSR 96-5p.[3]  In light of the fact that this case is being

---

[3]In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078 (10th Cir. 2004), the court held as follows:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) (**"We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.**"); <u>see</u> <u>also</u> <u>McGoffin</u>, 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. <u>White v. Barnhart</u>, 287 F.3d 903, 908 (10th Cir.2001).

366 F.3d at 1084 (emphasis added).  In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, **if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.**

remanded for further hearing, the ALJ shall address the issue of whether Dr. Ball should be recontacted.

## V. Did the ALJ err in his step five findings?

Plaintiff also asserts errors by the ALJ at step five (Doc. 11 at 25-28). The court will not reach these issues because they might be affected by the ALJ's resolution of the case after making RFC findings in accordance with the medical opinion evidence and SSR 96-8p. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1085 (10th Cir. 2004).

## VI. Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?

Plaintiff's briefs seek either a reversal and remand for an award of benefits, or, in the alternative, a reversal and remand for further hearing (Doc. 11 at 34; Doc. 15 at 9). However, should it be determined that reversal of the ALJ decision is warranted, neither plaintiff's briefs nor defendant's brief discuss the issue of whether the case should be remanded for an award of benefits or for further hearing. Reversal of the ALJ decision is clearly warranted on the facts of this case.

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.

---

1996 WL 374183 at *6 (emphasis added).

When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545 (10th Cir. 1987). Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

The first factor for the court to consider is the length of time the matter has been pending. Plaintiff filed for disability benefits on May 22, 2007 (R. at 16); therefore, this case has been pending for 4 years.

The second factor for the court to consider is whether a remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. The medical opinions of both Dr. Ball and Dr. McGehee indicate that plaintiff has numerous marked and moderate mental limitations. The testimony of the vocational expert (VE) was that a person with the mental limitations set forth in the reports of either Dr. McGehee (Exhibit 4F) or Dr. Ball (Exhibit 6F) would not be able to work (R. at 73-74). Defendant failed to point to any evidence in the record that disputes or contradicts the opinions of these two medical sources regarding plaintiff's mental limitations.

In the case of Graham v. Sullivan, 794 F. Supp. 1045, 1053 (D. Kan. 1992), this court held as follows:

> The ALJ's findings in this case are not
> supported by substantial evidence. A
> reasonable person would not conclude from the
> evidence of record that the plaintiff was
> able to perform sedentary work. As summarized
> above, several different physicians, most
> importantly the plaintiff's treating
> physician, have opined that the plaintiff is
> totally disabled. Their opinions stand
> uncontroverted. The plaintiff's activities
> are consistent with his alleged disability.
> The reasons given for the ALJ's credibility

> calls are irrational and belied by the
> record. The court sees no useful purpose for
> additional fact finding, so the case is
> reversed and remanded for an immediate award
> of benefits based upon the plaintiff's
> application. See <u>Sorenson v. Bowen</u>, 888 F.2d
> [706, 713 (10th Cir. 1989)].

<u>Graham</u>, 794 F. Supp. at 1053.  In the case before the court

(Farmer) the ALJ's reasons for discounting the opinions of Dr.

Ball and Dr. McGehee are not supported by substantial evidence.

Two medical sources have opined that plaintiff has numerous

marked and moderate mental limitations; the VE testified that a

person with such limitations could not work.  These opinions

stand uncontroverted.  Nothing in plaintiff's testimony is

inconsistent with the opinions of these two medical sources.

    In <u>Graham</u>, the court relied on the fact that a treating

physician had opined that plaintiff was disabled.  In the case

before the court, Dr. Ball, although acknowledged by the ALJ to

be a treatment provider, had only seen plaintiff on two occasions

before offering his opinion.  However, what is less clear is

whether or not Dr. McGehee was a treatment provider.  Plaintiff

states in his reply brief that he is not arguing that Dr. McGehee

was a treating source, but only an examining source (Doc. 15 at

7).  However, plaintiff, in his testimony, stated that he had

been seeing Dr. McGehee for about two years, once every 3 months,

for about 30 minutes per visit (R. at 54-55).  Thus, there is

evidence in the record that Dr. McGehee may have been a treatment

19

provider for the plaintiff.

As noted above, although it has been determined that reversal of the ALJ decision is warranted, neither plaintiff's briefs nor defendant's brief discuss the issue of whether the case should be remanded for an award of benefits or for further hearing.  Furthermore, it is not clear from the record whether Dr. McGehee is a treatment provider or a one-time only consultative examiner.  For these reasons, the court will remand this case for further hearing.  On remand, the court shall ascertain whether Dr. McGehee is a treatment provider.  If he is found to be a treatment provider, then, in light of the fact that two treatment providers have opined that plaintiff has mental limitations which prevent him from working, unless the Commissioner can point to evidence which both controverts their opinions and is sufficient to overcome the opinions of two treating sources, plaintiff should be found to be disabled, in accordance with <u>Graham</u>, and the Commissioner should ascertain the onset of disability in accordance with SSR 83-20.

On the other hand, if Dr. McGehee is found to be only a one-time only examining medical source, then the Commissioner must make a determination of what weight to accord to the opinions of Dr. McGehee, an examining medical source who relied on valid test results when setting forth his opinions, and Dr. Ball, a treatment provider who saw plaintiff on two occasions before

offering his opinions.  Unless the Commissioner can point to any evidence in the record which controverts their opinions, the ALJ should find plaintiff to be disabled and determine the onset date of disability in accordance with SSR 83-20.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 25th day of May 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge